AUGUST HACKART, JR., Appellee, vs. THE DECATUR COAL COMPANY, Appellant.

*Opinion filed December 22, 1909.*

1. MINES—*miner has right to determine the size of props and caps wanted.* Under section 16 of the Mines and Miners act, relating to the duty of the mine manager to provide a supply of props and caps, the miner has a right to determine the length and dimensions of the props and caps necessary to support the roof of the mine, and if he demands props and caps of specified lengths and dimensions, and the demand is not unreasonable, the mine manager must furnish the specified kind.

2. SAME—*effect where demand for props and caps is general.* Where a miner's demand for props and caps is general and does not specify the number, size and dimensions of the props, caps or timbers he desires, the mine manager may supply what in his best judgment will suffice for the purpose, and he is guilty of willful violation of his duty in that respect only in case he knows that those he furnishes are insufficient.

3. SAME—*what evidence is incompetent as tending only to show habitual negligence.* Where the demand of a miner for props and caps is merely general and is filled by the mine manager by sending about twenty-five props and only four caps, evidence showing that upon numerous other occasions the defendant had failed to supply a sufficient number of cap-pieces for the props furnished is incompetent, as tending only to show that the defendant was habitually negligent in supplying caps, and its admission will be a ground for reversal unless it appears that it was not prejudicial error. (*Taylor Coal Co.* v. *Dawes,* 220 Ill. 145, distinguished.)

4. SAME—*what tends to show violation of duty independent of any statute.* A count of a declaration charging the defendant mining company with a violation of its duty, existing independent of any statute, to provide its servant a reasonably safe place to work, is supported by uncontradicted evidence showing that the props supplied by the defendant upon the servant's general order were mostly rotten or worm-eaten and unfit for use.

243—4

5. TRIAL,—*witness should be required to testify in the English language if possible.* Under the provision of the constitution requiring all judicial proceedings to be conducted in the English language, courts should require witnesses to testify in English if it is possible; but the action of the court in allowing an interpreter, over objection and without attempting to ascertain whether the witness could testify in English, will not work reversal if a reading of his testimony shows that no injury resulted.

6. APPEALS AND ERRORS—*when admission of incompetent evidence will not reverse.* The admission of incompetent evidence will not work a reversal where the only prejudicial effect it could have had would be to enchance the damages by creating a prejudice against the defendant, but there is no claim, and nothing to show, that the damages were greater than they would have been without the incompetent evidence.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Macon county; the Hon. W. C. JOHNS, Judge, presiding.

LEFORGEE & VAIL, for appellant.

REDMAN & HOGAN, and JACK & DECK, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The Appellate Court for the Third District affirmed a judgment recovered by August Hackart, Jr., appellee, in the circuit court of Macon county, against the Decatur Coal Company, appellant, for damages caused by a fall of slate from the roof of defendant's mine injuring the plaintiff, who was working in the mine, and this appeal was prosecuted from the judgment of the Appellate Court.

Only two specifications of the assignment of errors are presented for our consideration: First, that the court erred in admitting evidence of complaints by the miners to the officers of the defendant previous to the accident in question that they were not being supplied with sufficient cappieces; and second, that the court erred in permitting a witness to testify through an interpreter.

The case was tried upon three counts of the declaration
and a plea of the general issue thereto.  Two of the counts
charged the defendant with a willful violation of its statu-
tory duty to provide the plaintiff with a sufficient supply
of props and caps to support the roof of the mine at the
place where he was working, and the third charged the
defendant with a breach of the duty existing, independent
of any statute, to use reasonable care to provide the plain-
tiff a reasonably safe place to work, which breach consisted
of furnishing props which were weak and insufficient to
support the roof of the mine.

Section 16 of the Mining act, on which two of the
counts were based, requires the mine manager always to
provide a sufficient supply of props, caps and timber deliv-
ered on the miners' cars at the usual place when demanded,
as nearly as possible in suitable lengths and dimensions for
the securing of the roof by the miners.  Under this statute
the miner has a right to determine the length and dimen-
sions of the props and caps necessary to secure the roof
of the mine, and if he makes a demand for props and caps
of particular and specified lengths and dimensions and the
demand is not unreasonable, the mine manager must fur-
nish the particular and specified kind.  (*Western Anthra-
cite Coal and Coke Co.* v. *Beaver,* 192 Ill. 333; *Kellyville
Coal Co.* v. *Strine,* 217 id. 516; *Springfield Coal Mining
Co.* v. *Gedutis,* 227 id. 9.)  One of the statutory counts
alleged that the plaintiff demanded twenty-five props and
one cap-piece for each of the same, and such a demand
was not proved.  To recover under that count it was nec-
essary for the plaintiff to prove that he made the demand
alleged and that the props and caps were not furnished to
him, and there could be no recovery under that count.  A
demand for props and caps may be general and not spe-
cific, and if the miner does not specify the number, size or
dimensions of props, caps or timbers that he requires, the
mine manager may supply what in his best judgment will

suffice for the purpose. Manifestly, the number and kind to be supplied will necessarily vary with the situation and circumstances of the case, and the mine manager is guilty of a willful violation of duty only in case he knows that those furnished are insufficient. In this case the demand was made by the plaintiff's father and was general and not specific. Each miner had a number, and the plan adopted at the mine for ordering props and caps was for the miner simply to write his number on a blackboard at the top of the mine, which indicated that he wanted props and caps. The father worked with the plaintiff in the same entry, and before going to work in the morning on the day of the accident he wrote his number on the blackboard. At about ten o'clock in the forenoon a car-load of props and caps was sent down, containing about twenty or twenty-five props and only four caps. There was no complaint at the trial that an insufficient number of props were sent, but it was contended that the caps were insufficient in number and that there ought to have been a cap for each prop. The plaintiff set up a row of the props, seven or eight in number, about three feet from the face of the coal, and in so doing used all the caps sent down, leaving three or four props without caps, and while kneeling in front of the coal and wedging it down, slate fell from above, causing the injuries.

To maintain the charge of a willful violation of the statutory duty plaintiff offered evidence of previous failures to furnish as many cap-pieces as the miners thought were necessary, and the court admitted the evidence against the objections of the defendant. The plaintiff was permitted to prove that upon numerous occasions prior to the accident the plaintiff and other miners made complaints to the mine officers and the county mine inspector that the defendant failed to supply enough caps to go with the props which were furnished them. Plaintiff testified that on two or three occasions he made such complaints to the

mine manager, and plaintiff's father testified that he had heard plaintiff make such complaints. The mine examiner testified that on twelve or fifteen occasions before the accident miners had complained about not getting enough caps, and the county mine inspector testified that the miners reported to him that they were not being supplied with sufficient cap-pieces. This evidence did not tend to prove either a demand by the plaintiff at the time of the accident or failure of the defendant to comply with the demand which was alleged to have caused the injury. Its only tendency was to prove that on previous occasions the defendant had disregarded its duty and to prejudice the jury against the defendant as being habitually negligent in supplying caps. In *Taylor Coal Co.* v. *Dawes,* 220 Ill. 145, the evidence of previous acts was regarded as admissible to prove knowledge, but not to prove misconduct for which the suit was brought. The evidence was improperly received, and unless it appears that it was not prejudicial the error would require a reversal of the judgment. We are of the opinion, however, that no other verdict could have been returned than one finding defendant guilty, for the reason that the count charging a violation of the common law duty was proved by evidence which was not contradicted. The plaintiff introduced evidence that the props furnished were not sound and were worm-eaten; that they were obtained from a pile of all kinds of props and different kinds of wood; that some were worm-eaten and some badly rotted; that about six out of ten of the props were worm-eaten and three out of four were rotten; that the caps were pieces of slab about a foot long and one or two inches thick, procured at a mill, and short pieces of wood which were the refuse of the mill; that after the accident three of the props were broken and rotten and three were standing up straight through the slate. There was no evidence tending to prove the contrary, and a violation of a duty not resting on the statute was clearly established. The only

prejudicial effect which the incompetent evidence might have had would be to enhance the damages by creating a prejudice against defendant, and there is no claim nor anything to indicate that the damages allowed were greater than they would have been without the incompetent evidence.

August Hackart, Sr., the father of the plaintiff, was called as a witness, and the attorneys for plaintiff stated that in their judgment it would be necessary to use an interpreter in his examination. The defendant objected and sought to have some inquiry as to the ability of the witness to testify in English, but the objection was overruled and an interpreter was called without any inquiry or examination to ascertain whether the witness could speak English or not. The court acted solely upon the statement of the attorneys for plaintiff, and the action was somewhat arbitrary in calling an interpreter without giving the defendant an opportunity to show that the witness was able to testify intelligently in the English language. The constitution provides that all judicial proceedings shall be conducted in no other than the English language, and witnesses should be required to testify in English when possible. This witness had lived in Decatur fourteen years, during all of which time he had worked in defendant's mine under those who spoke the English language, and he necessarily had considerable knowledge of that language. A reading of his testimony, however, leads us to the conclusion that no injury resulted to the defendant from receiving it through an interpreter.

The errors of the court committed on the trial are not, in our opinion, sufficient to reverse the judgment of the Appellate Court, and it is accordingly affirmed.

*Judgment affirmed.*